```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


LARRY S. ELLIOTT,              §
                               §
     Plaintiff,                §
                               §
v.                             §   CIVIL ACTION NO. H-05-1025
                               §
UNITED STATES OF AMERICA,      §
                               §
     Defendant.                §
```

MEMORANDUM AND ORDER

Pending is the United States of America's Motion for Summary Judgment (Document No. 22). After having carefully reviewed the motion, objection, reply, and the applicable law, the Court concludes as follows.

I. Background

Plaintiff Larry S. Elliott ("Plaintiff"), pursuant to 26 U.S.C. § 6630(d)(1)(B), seeks judicial review of an administrative decision of the Internal Revenue Service (IRS) to uphold a levy on Plaintiff's property for unpaid federal employment taxes. Plaintiff is the Vice President and an 8% shareholder of American Energy Services, Inc. ("AES"). *See* Document No. 30 ¶ 7. AES incurred employment taxes that it did not pay for the tax periods December 31, 1999 through December 31, 2000, and December 31, 2001 through December 31, 2002. *See* Document No. 23

ex. 4 at 3. In April, 2003, IRS Appeals Settlement Officer Bart Hill (the "Officer") granted, as a collection alternative, an installment agreement that was executed by Plaintiff on behalf of AES. *See* id. at 4. It is undisputed that, soon thereafter, AES defaulted on the terms of the installment agreement by incurring additional employment tax liabilities for the first through third quarters of 2003, and it did not file its employment tax returns for the first through third quarters of 2004. *See* id. & ex. 5. AES filed for bankruptcy in April, 2004, and it is currently in bankruptcy proceedings (the "Bankruptcy Proceeding"). *See* id. ex. 6.

The IRS, upon determination that Plaintiff was a responsible person within the meaning of I.R.C. § 6672 for the trust fund portion of the taxes (a finding that Plaintiff does not dispute), made Trust Fund Recovery Penalty assessments against Plaintiff in the amount of $526,355.76. *See* Document No. 1 ex. 1 at 2. On August 9, 2004, the IRS issued to Plaintiff a Notice of Intent to Levy and informed him that the IRS intended to take collection action, including levy action, with respect to the trust fund taxes. *See* id. at 1-2. Plaintiff's representative timely requested a Collection Due Process ("CDP") hearing before the Appeals Office, on grounds that: (1) Plaintiff's account should be placed in "currently not collectible" status; (2) there should be no collection activity while it was possible for AES to satisfy the

underlying tax liability through the Bankruptcy Proceeding or otherwise; and (3) Plaintiff "should be allowed to enter into an Offer in Compromise if other collection alternatives are not available." *See* id. ex. 2 at 3; Document No. 24 ex. 9 ¶ 4.

On December 1, 2004, a face-to-face CDP hearing was conducted between the Officer and Plaintiff's representative. At the hearing, Plaintiff's representative maintained that Plaintiff's account should be considered uncollectible, and it is undisputed that he did not propose an installment plan or make an offer for Plaintiff to pay any amount. *See* Document No. 23 ex. 2 at 1 & ex. 3 ¶¶ 3-5; Document No. 24 ex. 9 ¶¶ 6-9. For a little over three months after the CDP hearing, the Officer and Plaintiff's representative continued to have oral and written communications about Plaintiff's case. *See* Document No. 23 ex. 2 at 1-2. The Officer asked Plaintiff's representative to provide additional information regarding Plaintiff's 2001 or 2002 transfer of his one-half community property interest in his home to his wife in exchange for his wife's one-half interest in AES stock (the "Transfer") and Plaintiff and his representative did so.[1] *See* id. ex. 3 ¶ 4 & ex. 2. Throughout the three months of post-CDP hearing

---

[1] Plaintiff contends the Transfer was made in May, 2001, well after AES had begun failing in the fourth quarter of 1999 to pay substantial employment tax liabilities. The putative deed was evidently not filed of record, however, until March, 2002, the year in which AES continued its delinquencies.

negotiations, Plaintiff's representative continued to maintain that Plaintiff's account should be placed in an uncollectible status and never proposed an installment agreement.

Not until February 25, 2005, did IRS Appeals issue a Notice of Determination upholding the proposed levy. See id. ex. 4. Plaintiff seeks review of the determination and argues that the Officer abused his discretion on the following grounds: (1) he did not adequately explain the basis for his decision to sustain the levy; (2) he proceeded with a collection action against Plaintiff while "it remained a possibility that [AES] would satisfy the underlying liabilities as part of its bankruptcy proceedings or otherwise"; (3) he determined, without sufficient evidence, that Plaintiff entered into a fraudulent conveyance with his former wife; (4) he refused to allow Plaintiff to submit any collection alternatives; and (5) he failed sufficiently to balance efficient collection needs against the intrusion of a levy upon Plaintiff, in contravention of I.R.C. § 6330(c)(3). See Document No. 1 ¶¶ 8-10; Document No. 24 at 8, 11-12.[2] The United States moves for summary judgment to uphold the determination, arguing that the Officer did

---

[2] In his Complaint, Plaintiff seeks an order requiring Defendant and the IRS to refrain from affirmative collection action against him and his property until either (1) AES enters into a plan of arrangement for the employment taxes and makes payments under it; or (2) an installment agreement can be proposed by Plaintiff and accepted by the IRS. See Document No. 1 at 3-4. See also Document No. 30 at 2.

4

not abuse his discretion in sustaining the proposed levy as a matter of law.

## II. Standards of Review

A. Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive

evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

B.    <u>Title 26 U.S.C. § 6330</u>

This Court has jurisdiction to review an IRS determination pursuant to 26 U.S.C. § 6330(d)(1)(B). The parties are agreed that where, as here, there is no challenge to the validity of the underlying tax liability at a CDP hearing, the appeals officer's decision is reviewed for abuse of discretion. *See* <u>Christopher Cross, Inc. v. U.S.</u>, 461 F.3d 610, 612 (5th Cir. 2006). *See also* <u>Jones v. Comm'r</u>, 338 F.3d 463, 466 (5th Cir. 2003). In the Fifth Circuit, the phrase "abuse of discretion" traditionally has meant

"arbitrary and capricious," or "without sound basis in fact or law." *See, e.g.,* Abu-Awad v. U.S., 294 F. Supp. 2d 879, 892 (S.D. Tex. 2003); Beall v. U.S., 335 F. Supp. 2d 743, 748 (E.D. Tex. 2004). *See also* Pennington v. U.S., No. H-04-3118, 2006 WL 1896996, at *3 (S.D. Tex. Jul. 10, 2006) ("Under the abuse of discretion standard, the court must consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment. . . . The court is not empowered to substitute its judgment for that of the agency.") (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 91 S. Ct. 814, 823-24 (1971), *overruled on other grounds by*, Califano v. Sanders, 97 S. Ct. 980, 984 (1977)).  The Fifth Circuit recently adopted a "clear abuse of discretion" standard in collection due process cases.  *See* Cross, 461 F.3d at 612 ("Congress likely contemplated review for . . . clear taxpayer abuse and unfairness by the IRS, lest the judiciary become involved on a daily basis with tax enforcement details that Congress intended to leave with the IRS.") (quoting Robinette v. Comm'r, 439 F.3d 455, 459 (8th Cir. 2006) (distinguishing judicial review of tax appeals from "more formal agency decisions.")).

The scope of this "deferential" judicial review is limited to the administrative record.  *See* Robinette, 439 F.3d at 459-60, 462 (under an abuse of discretion standard, it would be "incongruous" to "conclude that the appeals officer committed such an 'abuse' by

failing to weigh information that was never even presented to him."). *See also* Kitchen Cabinets v. U.S., No. Civ.A.3:00CV0599M, 2001 WL 237384, at *1 (N.D. Tex. Mar. 6, 2001)(Lynn, J.)(refusing to consider evidence about Plaintiff's tax payments for obligations accruing after the Notice of Determination because such evidence "is irrelevant to this Court's review of the [decision of the] Appeal Officer."). As such, the Court does not consider evidence regarding AES's filing a Plan of Reorganization and Addendum in the Bankruptcy Proceedings, since both documents indisputably were filed *after* the IRS issued its Notice of Determination and are not pertinent to the Court's abuse of discretion review. *See* id.

### III.  Discussion

Section 6330(c) of the IRS Restructuring and Reform Act of 1998 sets forth the issues an appeals officer should consider at a CDP hearing. *See* 26 U.S.C. § 6330(c). Specifically, the statute instructs the appeals officer to consider: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues raised by the taxpayer relating to the unpaid tax, including collection alternatives such as installment agreements and offers in compromise; and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. *See* id. "Section 6330

limits this court's review to whether the IRS officers 'adequately considered' [the taxpayer]'s compromise offer before determining that it should be rejected." *See* Pennington, 2006 WL 1896996, at *5 (quoting Olsen v. U.S., 326 F. Supp. 2d 184, 188 (D. Mass. 2004), *aff'd*, 414 F.3d 144 (1st Cir. 2005)). In general, the court does not consider "issues or collection alternatives that are not raised in the Appeals hearing." Zapara v. Comm'r, 124 T.C. 223, 243 (2005).

A.   Failure to Explain Grounds of Determination

Plaintiff argues that the Officer abused his discretion by not explaining the grounds of his decision to uphold the proposed levy action. However, in the Officer's five-page "Summary and Recommendation" that is included in the Notice of Determination (the "Recommendation"), the Officer discussed the three factors listed in Section 6330(c) and explained the basis for his decision. Specifically, the Officer (1) verified, based on "[a] review of the case history and transcripts," that the legal and procedural requirements have been met; (2) discussed the issues raised by Plaintiff during the CDP hearing; and (3) balanced the need for efficient collection with Plaintiff's concern that collection action be no more intrusive than necessary. *See* Document No. 23 ex. 4 (applying Section 6330(c)).

9

The Officer devoted a substantial part of his Recommendation to discussing the issues raised by Plaintiff at the CDP hearing, which included requests that (1) Plaintiff's account be declared currently not collectible, and (2) collection activity against Plaintiff be suspended while AES performed, or possibly could perform, on its installment agreement. *See* id. at 4-6. The Officer explained his basis for rejecting these alternatives. The Officer found that AES already had defaulted on the terms and conditions of the 2003 installment agreement that Plaintiff had signed, and it was appropriate to proceed with an enforcement action against Plaintiff. *See* id. at 6. The Officer also determined that Plaintiff had the ability to pay $2,642 per month, and, thus, the account was not uncollectible.[3] Regardless, the Officer found an installment agreement in that amount even if offered by Plaintiff "would not be appropriate" due to the taxpayer's efforts to "place his personal residence out of the reach of the government." *See* id. at 5. The Officer recommended that Compliance should further investigate the legitimacy of Plaintiff's transfer of his interest in his residence that was recorded in March, 2002. *See* id. at 5-6.

---

[3] Plaintiff does not contend that the Officer abused his discretion in determining that Plaintiff's account should not be considered uncollectible.

Although the Officer in an October 2, 2006, Declaration affirms the latter recommendation for an investigation, he recalls that such was not a factor in figuring the amount that Plaintiff could pay monthly. Moreover, he affirms what is evident from his February 25, 2005, Notice of Determination and Recommendation, namely, that neither Plaintiff nor his representative ever offered a collection alternative in the amount of $2,642 per month or any other sum. In short, there was no abuse of discretion attributable to any failure by the Officer or Defendant to explain grounds for the Determination.

B.  <u>Failure to Withhold Collection Action In Light of Bankruptcy Proceedings</u>

Plaintiff argues that the Officer violated IRS procedure and abused his discretion by "refus[ing] to wait until AES could enter into a bankruptcy payment plan before authorizing the collection action against [Plaintiff]." *See* Document No. 24 at 6. The Internal Revenue Manual (the "Manual") provides a list of factors for the IRS to consider in determining whether to suspend collection against responsible persons where the corporate taxpayer has filed for bankruptcy. These factors include, *inter alia*: (1) whether a plan is (or has been) confirmed in the corporate bankruptcy; (2) whether the corporate bankruptcy plan appears feasible and includes payment of the trust fund liability; (3) whether an adequate protection agreement is in place requiring

regular payments from the corporate bankruptcy; and (4) whether, if a plan is confirmed, all payments are being made regularly, no arrearage exists, and the debtor is meeting all other plan provisions. *See* I.R.M. § 5.9.3.9.1(3)(a)-(d). Furthermore, IRS Policy Statement P-5-60 provides that assertion of a penalty "normally will be withheld in cases of approved and adhered to . . . bankruptcy plans." *See* IRS, Policy Statement P-5-60, *reprinted in* I.R.M. 1.2.1.1.5.14 (approved Feb. 2, 1993).

Here, AES had already been in Bankruptcy Proceedings for approximately ten months before the Notice of Determination was issued. *See* Document No. 27 ex. 14 at 1; Document No. 23 ex. 4 at 1. It is undisputed that when the IRS sent the Notice of Determination, no bankruptcy plan had been filed or confirmed, no adequate protection agreement existed, and no payments were being made to the IRS. As Defendant correctly maintains, "[n]othing in IRS Policy Statement P-5-60 nor the Internal Revenue Manual sections cited by [Plaintiff] suggests that the IRS should withhold collection in the absence of a **confirmed** plan of reorganization." *See* Document No. 27 at 2 (emphasis in original). Here, after AES defaulted on its 2003 installment agreement and had incurred additional tax liabilities, the Officer proceeded with a collection action against Plaintiff rather than delay "to see if a bankruptcy payment plan eventually would be filed and approved." *See* id. This "exercise of judgment," which Plaintiff has not shown to

12

violate any IRS procedure or policy, was not a "clear abuse of discretion." *See, e.g.,* Robinette, 439 F.3d at 463; Cross, 461 F.3d at 613-14.

C. Refusal to Consider Installment Agreement Because of Alleged Fraudulent Transfer

It is undisputed that the Officer determined that he would not consider the offer of an installment agreement, if one were made, because he believed that the transfer of Plaintiff's interest in his home was potentially a fraudulent conveyance. *See* Document No. 23 ex. 4 at 5. Plaintiff argues that the Officer abused his discretion by determining, without sufficient evidence, that the Transfer was fraudulent. *See* Document No. 24 at 11.[4] Defendant argues that the Officer had sufficient rationale for his suspicions

---

[4] Plaintiff submits an odd, handwritten, two-sentence document in which Plaintiff purports to "deed over and give to you, Julie Elliott, my 50% ownership of the home and property at 5319 Mandell, Houston, Texas 77005," and in return "keep 100% of all AEYS stock issued to me directly or indirectly." *See* Document No. 24 ex. 5. This purported partition of community property is not signed by Julie Elliott. Although bearing (*twice*) the date of 5 May, 2001, the document was first placed of public record on March 4, 2002, and the date of acknowledgment for purposes of making the document recordable is not disclosed in the summary judgment evidence. The uncontroverted summary judgment evidence is that the Officer received from Plaintiff the putative deed dated 05 May 2001 more than two months *after* the CDP hearing. He considered it before the Notice of Determination was issued, but it did not change the determination that he already had prepared. *See* Document No. 23 ex. 2 at 2 (entry dated "02/23/2005" in Officer's Case Activity Notes, which states that the evidence was received, and although "the value of the [AES] stock was considerably higher during 2001," this evidence "does not change my determination. Compliance should still investigate the possibility of a fraudulent conveyance.").

based on the available evidence, and, in any event, the issue is irrelevant because Plaintiff never offered an installment agreement and no proposed agreement was ever rejected on this basis. *See* Document No. 27 at 6, 8.

In determining whether the Officer abused his discretion, it is not the Court's function to make a *de novo* determination of whether the Transfer was fraudulent. Instead, the Court must determine whether the Officer clearly abused his discretion. *See* Robinette, 439 F.3d at 458-59, 461; Cross, 461 F.3d at 612-14.

Assuming that the Transfer occurred as early as May, 2001, the Officer had ample rationale for suspecting that the Transfer was fraudulent and calling for further investigation. AES had not paid its full employment taxes from the fourth quarter of 1999 and throughout 2000. By May, 2001, AES had huge delinquent tax obligations. Defendant maintains that it would be "reasonable" for the Officer to conclude that Plaintiff, as an officer and shareholder at AES, was aware of his potential liability for the trust fund portion of substantial taxes at the time of the Transfer. *See* Document No. 22 at 8. It is undisputed that, in May, 2001, Plaintiff and his wife were also protesting a proposed tax deficiency in Tax Court for the years 1992 through 1995, and, by October, 2001, they would be found liable for approximately $123,000 in personal income taxes. Moreover, in 2004, while Plaintiff's request for a CDP hearing was pending, Plaintiff's wife

14

submitted a request for innocent spouse relief for the 1992 through 2003 tax years, which were the subject of the Tax Court case. *See* Document No. 23 ex. 2 at 1. Defendant argues that "if the transfer were valid and [Plaintiff]'s wife were granted innocent spouse status, the value of the residence [would be] placed beyond the reach of the IRS for collection purposes since [Plaintiff's wife would have] no personal liability for the income taxes nor for the Trust Fund Recovery Penalty assessed against her husband." *See* Document No. 22 at 4. Given this evidence in the administrative record at the time of the Officer's determination, it was not unreasonable for the Officer to conclude that the circumstances of the Transfer suggested that Plaintiff "was attempting to place his personal residence out of the reach of the government." *See* Document No. 23 ex. 4 at 5. Regardless, as Defendant argues, the Officer's belief that the Transfer was fraudulent is of no significance because it is undisputed that Plaintiff never proposed an installment agreement or made a proposal to make monthly payments in any amount, and hence, the Officer never rejected an installment agreement on the basis of the alleged fraudulent conveyance. Plaintiff has shown no abuse of discretion in respect to any alleged refusal to consider an installment agreement.

D.      Refusal to Allow Plaintiff to Submit Collection Alternatives

Plaintiff argues that the Officer abused his discretion by refusing to allow Plaintiff to submit a collection alternative. However, Plaintiff has presented no evidence that the Officer attempted to dissuade Plaintiff from filing a collection alternative at the CDP hearing or during the ensuing three months of communications. *See* Robinette, 439 F.3d at 464 (no abuse of discretion where appeals officer "merely dissuaded [the taxpayer] from making a meritless proposal," and there was no evidence that officer "attempted to dissuade [the taxpayer] from submitting a new offer altogether"). It is undisputed that, throughout the CDP proceedings, Plaintiff and his representative never proposed an installment payment plan, but, instead, maintained that Plaintiff's account should be declared uncollectible. *See* id. ("[T]he administrative record reveals that [the taxpayer] did not file *any* offer-in-compromise, based either on doubt as to liability or collectibility."). Section 6330 limits the court's review to whether the IRS Officer "adequately considered" the taxpayer's compromise offer, *see* Pennington, 2006 WL 1896996, at *5, and the court generally will not consider collection alternatives that are not raised in the CDP hearing. *See* Zapara, 124 T.C. at 243. Because it is undisputed that Plaintiff never proposed an installment agreement, and there is no evidence that the Officer

16

attempted to dissuade Plaintiff from doing so, the Officer did not abuse his discretion in this regard.

E.   Balancing

Plaintiff also argues that the Officer violated Section 6330(c)(3) by not sufficiently balancing efficient collection needs against the intrusion of a levy upon Plaintiff. However, the Officer in his Recommendation "specifically referred to this balancing test and noted the absence of any acceptable alternative that would be less intrusive than the levy." See Robinette, 439 F.3d at 464. The Officer reasonably determined that neither of Plaintiff's proposals raised at the CDP hearing--namely, to withhold all collection pending the possible filing and confirmation of bankruptcy plan, or to place Plaintiff's account in an uncollectible status--offered a viable collection alternative. In sum, the Officer adequately considered all factors necessary for an appropriate determination under Section 6630, and the Court finds no basis for concluding that the Officer abused his discretion in sustaining the levy action against Plaintiff. Because the administrative record reflects no clear abuse of discretion by Defendant, Defendant is entitled to summary judgment.

IV. <u>Order</u>

Based on the foregoing, it is

ORDERED that United States of America's Motion for Summary Judgment (Document No. 22) is GRANTED, and this case is DISMISSED.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 7th day of December, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE